The opinion of the Court was delivered by
DargaN, Ch.
It will not be necessary for me to consider seriatim, all the. questions that have been raised on this appeal, or discussed in the argument. It will be sufficient for me to remark in a brief way, on the grounds, upon which the decree of the Court will rest.
I am not aware, that there is any difficulty, or doubt as to any legal principles involved in the case. The deed of Joseph B. White the elder, of the 2d February, 1815, is confessedly legal as to the form, and the manner of its execur tion, and perfectly legitimate as to the purposes which were intended to be accomplished by it. And it should now be enforced by the decree of this Court, if there be nothing ex post facto, which has superseded or defeated it.
In the first place, speaking for myself, and not for the Court in this particular, I concur with .the Chancellor, who *492 beard tbe cause on circuit, in tbe construction wbicb be bas given tbe instrument, as to tbe question of survivorship. The donor, Joseph B. White, in consideration of the love and affection which he bore to his seven children then living, namely, Mary Ann, James Grier, Charlotte, Emily, Eliza Margaret, Joseph, and Anthony, and in compliance with the request of his deceased wife Judith White, and for the better support and maintenance of his said children, and for a nominal pecuniary consideration, conveyed to Leonard White, sixteen slaves by name; in trust for the sole and separate use of the1 said children. Here, the donor declares that he reserves the use of the said slaves and their increase during his natural life, "and from and immediately after his death to be taken in trust by the said Leonard White, and as the children before named arrive at age, or marry, at which time, the said negroes and their increase to be equally divided between them, or the surviving ones of the seven before mentioned, share and share alike,” &c. Taking all the parts of this deed together, the construction which I would give it, and it is the only one which it admits of, is that the donor reserving to himself a life estate in the slaves, conveyed them to Leonard White, in trust, at his death for his seven children (all of whom were then infants,) and to be equally divided among them or the survivors of them ; with authority to the trustee to divide and allot to each one his or her share as they respectively attained the age of twenty-one years, or married. In my opinion only those who were survivors at the termination of the life estate were entitled to take. Evidently the testator contemplated his own death before all his children should marry or attain the age of twenty-one years. And hence the provision for the partial partition of the property, as they respectively attained the age of twenty-one years or married. Each one of the children, attained the age of twenty-one years in the lifetime of their father. All of them married except Emily White. *493 Sbe and Mary Ann, wbo after tbe execution of tbe deed, intermarried with William M. De Lorme, and James Grier White, predeceased tbe donor. Charlotte Bossard, Eliza Margaret Hale, Joseph B. White and Anthony White survived the death of Joseph B. White, (the donor,) which occurred on the 31st December, 1852. These survivors, and Samuel Hale, the husband of Eliza Margaret, filed this bill on the 15th October, 1853, against Maria H. White, the widow and executrix of Joseph B. White, claiming, that they alone, as the survivors, are entitled to the negroes mentioned in the said deed, and their increase; demanding a discovery and delivery of such of the negroes or their increase as remained in the possession of the said Joseph B. White, at Ms decease, and a discovery and an account of such of them, as went out of his possession in his lifetime by gift, sale, or otherwise.
Upon the question of survivorship I shall add no more. The remárks I have already made as to the plaintiffs’ rights as survivors are my own speculations. Erom the view which the Court has taken of the case, it has become unnecessary to decide, or discuss that question.
. None of the negroes conveyed. by the deed of 1815, or their issue, remained in the possession of Joseph B. White, Sr., at the time of his death. As far back as the year 1839, they and their increase had all gone into the possession and enjoyment of the then six living donees under the deed, in equal shares; Emily, who was then deceased, receiving no share. The complaint now is, that the present plaintiffs as survivors are entitled to the negroes, which in that division were allotted to Mrs. De Lorme, and James Grier White, or to an account from the estate of the tenant for life for the value thereof. The plaintiffs have not made the representatives of Mrs. De Lorme, and of James Grier White, parties to these proceedings, as I incline to think they should have done. It has been decided during this term, that where the *494 tenant for life sold a negro to a purchaser with notice, by whom tbe negro was removed from the State, both the life tenant, the vendor, and the purchaser with notice were liable to the remainder-men for the full value of the negro; and as between the tenant for life (the vendor) and the purchaser, the former was primarily liable. But where the property is still within the jurisdiction of the Court, and subject to the claim of the remainder-man, it is not so clear, that he should not resort to the property itself in the hands of the purchaser. Cannot the tenant for life, sell or give his life estate, if it be done without collusion or fraud, and the property not be eloigned from the jurisdiction of the State, without subjecting himself to liability as for a breach of trust ? But let that pass.
It is not disputed that Joseph B. White, Sr., about the 6th October, 1829, relinquishing his life estate, caused all the negroes conveyed by the deed of 1815, and their increase amounting in the aggregate to forty-nine in number, and sixteen slaves of his own, altogether sixty-five, to be fairly and equally divided among his six children then living; Emily alone being at that time dead. The children of Joseph B. White, Sr., these plaintiffs included, then went into the possession and enjoyment of their respective shares, and have so continued to the present time.
If these parties were then sui juris, and aware of their rights under the deed of 1815, the claim set up by them in this bill would be preposterous. But two of them were at that time under age, (Joseph and Anthony, I believe,) and all of them say, that, when they accepted their respective shares in that division, they were entirely ignorant of their rights under the deed of 1815, and even of its existence until after the death of Joseph B. White, Sr. (31st December, 1852.)
It is not denied that if these plaintiffs had notice of the deed of 1815, at any time within four years prior to the *495 institution of tbis suit, they would be concluded by the statute of limitations. But they averred want of notice in tbeir bill, and according to a well séttled principle of our Court, tbe burthen of proving notice, devolved upon the party who affirmed it. And now the question of fact comes up, and it is the great and most difficult issue of the case, had these plaintiffs within the time intimated, notice of the deed of 1815 ?
I premise, that after so great a lapse of time, from 1829 to 1853, (twenty-four years,) and after the death of the party whose estate is sought to be subjected, very strict proof could not be reasonably expected or required. Indeed, why may not the lapse of twenty-four years raise a presumption of notice? That lapse of time raising a presumption of almost any fact necessary to quiet title.
But I proceed with the proofs showing notice. There was no fraud. The idea of fraud is altogether excluded. The advantages were all on the other side. Joseph B. White surrendered his life estate, which he might have retained to the day of his death, which would have been for twenty-four years. What motive was there for concealment ? In addition to this, he gave and divided at the same time, among them, sixteen more negroes of his own, to which they at that time had no claim either present or future. What advantage did Jos. B. White gain in that transaction ? How did it advance his interest ? His office, on the occasion, was to give and surrender, theirs to receive. The falling in of the remainder was anticipated by twenty-four years, besides the sixteen negroes that were included in the division. What did the children lose by the anticipation of the time of division ? Merely the chances of survivorship. (If indeed that construction be correct, which admits of great difference of opinion.) On the supposition, that these claimants would have been entitled to take as survivors, in that case, they surrendered the chance of their being the survivors at the *496 termination of the life estate, against tbe equal chance of those who were deceased at that time being the survivors. The chances were equal, and the mutual surrender of chances was a fair and full consideration ; and it was an arrangement which any contingent remainderman would have accepted to say nothing of the sixteen additional 'negroes brought into the division. What motive then was there for the suppression or concealment of the deed of 1815 ? Why should it not have been brought forward, and made the basis of the arrangement ? And if it had, who can doubt that an arrangement, so beneficial to the children, would have been accepted by them ? There could have been no dissatisfaction at this partition. If there were heart-burnings, they were not on this account. The old man had married his third wife, and this formaPdivision imported to them that this' was all they were to receive of his estate, as it has actually turned out to be. “Sine illoe. lachrimoe /”
Another fact tending to show notice, is the registry of the deed in the office of the register of mesne conveyances. It is true that the registry of no deed not required by law to be recorded, operates as implied notice in any case. The implied notice arising from the due registry of a deed is equivalent to the most positive notice. But certainly the registry of a deed not required by law to be recorded, rebuts all idea of concealment; particularly where the original is delivered into the hands of another person who has consented to act as trustee; and who is the lawful custodian of it. The registry of a deed, under these circumstances, for so long a time, and at so early a period after its execution, and where the register’s office is in the immediate vicinity of the parties complaining, may surely be regarded as a circumstance not of itself sufficient, but combined with others to show notice.
There is another fact of much significance on this question of notice. The sheet of paper on which the particulars of the partition were stated has been preserved, and has been *497 introduced in evidence. This paper, besides showing tbe care with wbicb equality was sought, and even-handed justice done in the division, shows this further fact: that there were two sets of negroes divided on that occasion: first, all the negroes and their increase covered by the deed of 1815; and then the sixteen slaves which Jos. B. White, Sr., at that time gave to his children. From the indications of this document, Jos. B. White, Sr., may fairly be presumed to have said, “ here are the negroes to which you are entitled at my death; I surrender to you my life estate, and now divide them equally among you. And here are sixteen more, which I now give you, and divide them- also equally among you.” Let it be remembered, that all Joseph B. White’s children but two, were, at that time, of age, and those two not far from it. Was it not calculated to awaken their attention and inquiry ? Would they not naturally have asked, “ why this two-fold division ? why this separation of the negroes into two lots ?” The easiest and most simple mode would have been to throw all the negroes into one lot, and to have made one division. The manner in which the division was effected was calculated to excite attention, and to elicit inquiry. And if they had enquired, they would have made the discovery, the want of which they now complain of. I do not doubt that they did so; that the inquiry was then made, and the explanation then given'; if indeed the fact was not well known before. Here was a division in the first place, of all the negroes embraced in the deed, and their issue. And then there was a division of sixteen more negroes, belonging to Jos. B. White, himself. Here was a very strange coincidence, if the parties were not proceeding under the deed of 1815.
Upon the statement containing the particular’s of the partition, all the donees under the deed who were of age, including William M. DeLorme, who had intermarried with Mary Ann, and John P. Bossard, who had intermarried with Charlotte) *498 signed an acknowledgment in writing, in tbe following words, namely: “we, whose names are here annexed, are. satisfied with the within division of property, October 6, 1829.” This formality was strangely out of place, if the parties supposed that they were dividing negroes which were then, for the first time, given to them. But it is perfectly natural, consistent and appropriate, if it be supposed to relate to negroes, t'o which the parties in the division had a pre-existing right, and for which Joseph B. White, Sr., was responsible at the termination of the life estate. The transaction is inexplicable on any other supposition. From all these circumstances combined, without doing violence to any part of the evidence, it may be fairly inferred, that the parties have yielded up their right of survivorship, under the deed of 1815; and if not so, that they had notice of that deed, and having acquiesced for so long a time, their claim has become stale, and one which this Court will not enforce.
In addition to this, the Court of Equity is always reluctant to disturb and open family settlements, more particularly old family settlements; more particularly still, in cases where the parties principally to be affected by them are dead, and cannot answer and explain. In this instance, both Jos. B. White, Sr., whose estate is sought to be made liable, and Leonard White, the trustee, another important actor in the transaction, are dead. Their voices are silent in the grave. They cannot speak or explain. To disturb and open important and formal family .settlements, made twenty-four years ago, in which they were principal parties, would be to grope in the dark after justice, and injustice would be more likely to be done. One of the consequences of this delay is, that perhaps things cannot be brought back to the statu quo. If the proceedings had been earlier, and the representatives of Mrs. DeLorme and of James Grier White had been brought in, equal justice could have been done to all.
At the date of the partition, on the 6th October, 1829, two *499 of tbe children of Jos. B. White, namely, Joseph B. White, Jr., and Anthony White, were not of age. But though infants in law, they were not children of tender years. They were in esse in 1815. They were the children of Jos. B. White, Sr., by his first wife, and he was at that time again married. The youngest of the two must have been seventeen or eighteen years of age. It is probable that they understood the transaction as well as those who were adults. They participated in the division. They got their full share, and have been in the enjoyment of it ever since. When an infant wishes to avoid his executed contracts and settlements on the ground of infancy, he must proceed within a reasonable time after he has attained his majority, and after he has had notice of his rights. An unreasonable delay after the removal of the disability, amounts to acquiescence, and acquiescence is affirmation. All the circumstances which I have relied on as sufficient to raise a presumption of notice to the adults of the deed of 1815, in my judgment, operate with equal force in raising a presumption of notice to the infants. They have 'had the same opportunity of knowing their rights and of asserting them by suit, that the others have had. They must have been of age by 1838 or 1834, and twenty years afterwards, or thereabout, they filed this bill. It is too late. The claim is stale. Besides, it is subject to the bar of the statute of limitations, which is pleaded, unless there is fraud. Want of notice does* prevent the statute of limitations from running whei'e there is no fraud. And I do not see, in this case, the slightest evidence of fraud.
It is ordered and decreed that the circuit decree be affirmed and that the appeal be dismissed.
DuNkxn and AVasdlaw, CO., concurred.
Johnston, Ch., also concurred, although absent at the delivery of the opinion.

Appeal dismissed.

 Does not prevent. Qu?